The last case on today's docket is the case of people in the state of Illinois v. Gerald Harker. And we have Benjamin Sampson v. Kellett and John Gleason for the evidence. You may proceed when you're prepared to. Thank you, Your Honor. You guys won. The appellant is Mr. Sampson. You defend the sentence. I'm sorry. You weren't going to let him get away with that, were you? May it please the Court? Yes. This is a state appeal from an order of suppressing evidence, a bag containing a mobile shake-and-bake style meth lab that the defendant left in a public vehicle, a vehicle for hire. The facts are that Marion County Sheriff's deputies received a report that someone would be leaving a rural home with methamphetamine. They conducted a stakeout, saw the defendant standing by the side of the road holding a bag, saw a car slow pick up the defendant. The officers followed the car, stopped it for speeding, conducted a warrant check on driver and passenger, the defendant, and found that the defendant was wanted on an unrelated outstanding warrant and took him into custody. The officer who patted him down detected the smell of methamphetamine, which he recognized from his training and experience. The officer who had seen the defendant holding a bag forgot about the bag during the arrest, and the livery service driver drove away with the defendant's bag in his car. A couple hours later, the- Was it in the trunk? It was in the trunk, yes. And did the officers see him place it in the trunk or not? The record does not reveal that, Your Honor. But a couple hours later, the car service company called the Sheriff's Department and said that the person they had arrested had left a bag in a car, and would the officers please come and get it. The officers responded. The driver met them there, led them to his car, and the driver opened the trunk for the officers, revealing the bag. As the officers reached for the bag, they detected the odor of methamphetamine, which, again, they recognized from their training and experience. They opened the bag. Smelled it? Smelled and tinted? Yes, Your Honor, they smelled it. They smelled it and then they opened it. The record actually says at page C-128, the officer testified, when we took the bag out of the trunk, it was obvious that the same smell that was on him, the chemical smell, was coming from the trunk area bag, and that's when we opened the bag. And at that point, the officers, recognizing what was inside the bag, called the Illinois State Police Meth Response Team. There was a motion to suppress the evidence combined with a motion to quash the arrest. At the combined hearing on those motions, most of the evidence related to the motion to quash the arrest. The defendant argued in support of his motion to suppress the bag, only that the state had not proven that the officers opened the bag pursuant to an inventory search. The court suppressed the evidence because the court found that the inventory search exception and the exigent circumstances exceptions to the warrant requirement did not apply. The people are appealing the suppression order, arguing that reversal is proper because the defendant did not prove that he had a legitimate expectation of privacy in that bag. Now, the defendant on appeal is arguing that the state has forfeited the ability to bring this argument on appeal by not raising it below at the hearing. People disagree. The defendant seeking a suppression of evidence must make out a prima facie case of an illegal search, a search within the meaning of the Fourth Amendment, and he does this by proving a legitimate expectation of privacy in the property search. And only then, once he makes out this prima facie case, does the state have the burden to counter that prima facie case. By statute, section 114-12 of the Code of Criminal Procedure says the burden of approving a search and seizure where unlawful is on the defendant. So when the defendant has not shown this prima facie case, the state is not obligated to raise that failure in the circuit court because the burden never shifts to the state. Therefore, the state can argue on appeal that suppression is error because the defendant has not made out his initial burden to prove an illegal search, which he's required to carry as the movement. And even if the state has forfeited this argument, even if the defendant is correct that the state was obligated to bring that objection in circuit court, suppression was plain error because the defendant did not meet his burden of proving that he had a legitimate expectation of privacy in the back. What about abandonment? Your Honor, the people argue that as well, that it was plain error for the circuit court not to recognize that the exception to the warrant requirement of abandoned property applies. But one only gets to that argument if one accepts that the defendant did have a legitimate expectation of privacy in the back because only then does the burden shift to the state to prove an exception to the warrant requirement. But yes, in the reply brief, Your Honor, the state does argue that it was plain error for it. Well, in the opening brief, the abandonment argument appears as well, but it wasn't raised below. And so the state is arguing in the reply brief that it was plain error for the circuit court not to recognize abandoned property, which is an objective inquiry perfectly appropriate for a plain error review. It's based on the totality of the circumstances. The state proved here by preponderance of the evidence that the defendant's voluntary conduct would lead a reasonable person in the deputy's position to believe that he had relinquished his property interest in the bag. The defendant smelled like meth. The bag smelled like meth. The defendant was wanted on an outstanding warrant. The defendant was taken into custody. In these circumstances, a reasonable person in the officer's position would believe that the defendant had abandoned the property and therefore opening the bag did not violate any Fourth Amendment right of the defendant. Another exception to the warrant requirement that the people argue applies under the plain error doctrine is the automobile exception, that the bag was a closed container in the car and that the officers obtained probable cause to open the bag once they smelled the odor of methamphetamine and recognized it. Of course, a trained police officer recognizing that smell creates probable cause sufficient to permit the officer to open the bag under those circumstances. They didn't know where he was arrested, though, right? I beg your pardon? They didn't look for the trunk at the arrest? The record does not show that the trunk was opened during that arrest, no, Your Honor. Does it say anywhere whether or not the officers observed? I mean, didn't they observe a person coming down the lane and getting in the cell? Presumably, they could have or would have observed the bag going into the trunk. Well, the officers said that he opened it. That the officer forgot about the bag? That's what she testified, yes. She said that she was doing her own dispatch work that day, like the dispatcher was out or something, so she was performing more of the duties than she normally would have performed in a normal arrest. I think that the evidence showed, and she described very clearly in her testimony A bag. I beg your pardon? A bag. Yes. That she thought a bag. Yes, and she also described, though, her drive, that she actually drove past the end of the driveway where the defendant was, and then she drove a little bit further, turned around, I mean, I think it was like a quarter of a mile or half a mile that she testified to, and at that point stopped, turned around, and came back to follow that car. So perhaps she didn't see the, I know I'm speculating, but perhaps she didn't see the defendant place the bag in the trunk because she was going the other way, going down the road, and then turning around. Because the record does show that she did do that. If the court has no further questions, I'll actually save the rest of my argument for rebuttal. Thank you. We have opportunity for rebuttal, thank you, Ms. Ganser. Mr. Gleeson? Sorry again for speaking out of turn. Oh, don't worry about it. Now everyone knows what a creature of habit I am. May it please the court. In the circuit court, this case was about whether the search of Parker's bag qualified for the inventory search exception to the Fourth Amendment warrant requirement. The court ruled that the search did not so qualify and was unlawful. Now, on appeal, the state wants this case to be about almost anything but that. Most of all, the state wants this case to be about what? Bagging. Maybe he abandoned it. That's an argument, a theory that the state has advanced here in this appeal, but did not advance in the circuit court. I can discuss the merits of that. I think Your Honor wants me to do that. The defendant was arrested, right? Yes, he was. And he had the case that was in the trunk, right? The bag was in the trunk. He was going to the jail. Well, what about my case? Give it to me so I can go. He left it there, right? Well, certainly no way to get out of the trunk. With the cab or whatever it was there. Right. I call it a harmful hire. It's a Blue Angel. He abandoned that. But that was the name of it. Yes, Blue Angel, a car for hire. Did he abandon that case then? I would suggest that he did not abandon the bag. He is not like one of those defendants who runs away from his luggage at the airport, that kind of thing. Parker was separated from his bag only because the police forcibly separated him from his bag. I don't see how he could find an abandonment on those bags. He was going to get on the train and go somewhere. He probably would have brought that bag with him, right? So if he'd leave it there, he just... Oh, presumably, yes. Abandoned. Well, I mean, the fact that he didn't say, Oh, by the way, officer, get that bag. Put that bag in the trunk. Be sure to get that bag out. You know, we have the testimony from this police officer, the arresting officer. She was so discombobulated by all this arrest business, she forgot about the bag in the trunk and off the car went. Even back in the jail, she still forgot all about the bag. It was only when this call came in, Oh, right, the bag. We forgot the bag. Nobody's contending that the bag wasn't his, right? Or are you? I didn't hear anybody in the second court contending that the bag was not his. Okay, because I'm looking at something from the record where Deputy Sheriff Hannah Muir says, As she passed the driveway of the Mador house, she saw a person there with a black bag on his shoulder. Right. And she did not testify that she saw this person place the bag into the trunk. That's an answer to your honors question. Yes, I appreciate that. So getting back to that, if we don't blame the police officer for forgetting all about this bag that was supposed to be so important to her, maybe Parker forgot about the bag, too. You get on the train, he wouldn't bring the bag with him. At that point, he missed his chance to get on the train. Yeah, he missed his chance to get to the train, y'all. With all the drug in that case. I know. If the officer forgot all about the bag, I would think that the arrest would be at least as discombobulated an experience for him as it was for her. With drugs in that case. The drugs that were in that case, right? Drugs were sent in there, right? Yeah, I know about drugs. I remember there was tubing and coffee filters. Right, yeah. Right. But as I said... The defendant didn't want that, right? Well, he probably didn't want to be associated with evidence that he was involved in criminal activity. Yeah. And that's true of everybody, I suppose. Okay. So, in the circuit court, it was fought on the... But the state has abandoned that. It's now focusing primarily, from what I gather, on this business about legitimate expectation of privacy and saying that he did not establish this legitimate expectation of privacy in his bag. Now, if I could say just a moment, this standing business versus legitimate expectation of privacy business. And recently, the Illinois Supreme Court has moved away from the Fourth Amendment standing language and has moved toward the legitimate expectation of privacy language. I would suggest that this change did not affect the change in the law. I mean, all those cases that I cited are still good law, so to speak. In most cases, and I think in this case, the defendant would establish his Fourth Amendment standing by establishing that he had legitimate expectation of privacy in the place of the bank that was searched. So, really, the two ideas are essentially the same idea. Now, the state did not argue lack of standing in the circuit court. So, I think that this court should apply the rule in People v. Holloway, 86-07-78, 1981. Apply the rule in Holloway and say that if the state did not raise or argue lack of standing in the circuit court, it should not be allowed to raise lack of standing here in the appellate court. Now, even if the court, for whatever reason, wants to address the merits there, the evidence of the suppression hearing was, or indicated, or certainly could suggest to a reasonable person, that Harker had the bag around his shoulder and put the bag in the trunk of the car for hire before getting into the car for hire and heading off. Now, I can imagine a trial for drug possession where the prosecutor argues to the jury that that evidence by itself would be enough to prove beyond a reasonable doubt that Harker possessed the bag. Well, for goodness sake. Now, if the evidence shows that he possessed the bag or had a possessory interest in the bag, how can we not now argue that he did not establish a legitimate expectation of privacy in the bag? If he had a possessory interest in the bag, he certainly had Fourth Amendment standing. He certainly had a legitimate expectation of privacy in the bag. You know, I am a possessor. Well, if I had a wallet, I would be possessing the wallet right now. And I would have a reasonable expectation of privacy in that wallet. At any time did he make a claim of possessory interest in that bag? At any time? Well, he did not testify. No, I mean, was there any, did the police have any notation, hey, I left my bag in the livery car? No, no, no. If you take the door of the cab and throw it out there, keep on going, he had taken that case and threw it out of the cab. Oh, certainly if he threw the bag out the window of the cab and kept on going, then we would have an abandonment issue. Yes. Well, we wouldn't really because it was totally not addressed in the circuit court. Although if that was the fact in the circuit court, I would suppose that the state would have advanced that theory. But put it in the trunk by somebody else, he didn't have any cab at that, right? It was somebody else, the angel or whatever they're talking about. Yeah, Blue Angel's car. There was no evidence that the bag was from somebody else. Right. Is that the question? Right. So once Blue Angel calls the police and say, look, this person who hired us left the bag in the car, the police have a right to go obtain that or pick up that bag, right? Or do you think they should have just left it with the livery company? No, I don't think they should have left it with the livery company. So they have the right to go get it. Once they go to get it and they smell what they have been trained to believe is the smell of products of methamphetamine, they have no further right with respect to that bag. To open it? I don't think so, unless they get a warrant. Get a warrant. Could they have inventoried it without opening it? Is that your position? If they smell what they presume to be meth products coming out of it? I mean, isn't that like an EPA violation immediately? They're not allowed to take something that they reasonably believe contains methamphetamine products and just take it down to the station and put it in a locker without inventorying it? Yeah, I think they could have taken it to a locker and gotten a warrant based upon the smell of the thing and executed the warrant. I would think so. I don't think it's right even to consider all these other theories because they were not advanced in the circuit court. Okay, wasn't it advanced that when they went to remove the bag from the car that they immediately knew that it contained meth products? I don't think they phrased it that way, but they did say that the bag had the same smell as Harker himself. And they knew that smell to be the products of the cooking meth. They said it was a chemical smell, and they at least suspected that it could be meth. And I suppose one bit of testimony that might be applicable here is that one of the officers, I forget whether it was Sergeant Cripps or Deputy Burr, I think it was Deputy Burr, the arresting officer, she testified that it is their standard procedure in Marion County to call the Illinois State Police meth response team whenever they encounter something that potentially could be used to manufacture meth. So I don't know how strong a suspicion that was. I have another 30 seconds or so. 30 seconds, that's it. Okay. Now, I think I already, I hope I dealt adequately with the abandonment theory, but my main point is that the Court should not even consider theories that were not advanced in the circuit court. I mean, the theories and the facts that pertain to those theories should be explored, first of all, in the circuit court if we're going to add any kind of meaningful review. And none of these theories was advanced in the circuit court. It was all fought on the grounds of inventory search, and I think that should be the sole focus here also. Please affirm the suppression order. Thank you, Mr. Gleason. Ms. Camden? Thank you, Your Honor. With regard to the argument that the property was abandoned, the defendant said that he was, quote, forcibly separated from the bag. There was no evidence in the record that he was forcibly separated from the bag, that anything would have prevented him from saying this.  He could have said, hey, that's my bag. What about my stuff? Also, for purposes of establishing the abandonment exception to the warrant requirement, it doesn't matter what's going on subjectively in the defendant's mind. It doesn't matter whether the defendant, like the officer, forgot about the bag in that moment. Abandonment is an objective inquiry. Whether his conduct would lead a reasonable person in the deputy's position to believe that he relinquished that property interest, whether or not he honestly forgot it or simply viewed this arrest on an unrelated warrant as a great way to get away from this contraband is immaterial for purposes of the applicability of the abandonment doctrine. Can I ask you one question? Were they arguing in the trial court inventory search? Yes, Your Honor. What else did they argue? Nothing. Okay. It was really a woefully thin record on the suppression motion, Your Honor. In fact, the state said that she wasn't prepared to argue the suppression motion, which I think accounts for some of the problems that now beset the state and the reason why the state is raising abandonment and the automobile exception under the plain error doctrine. And under that automobile exception, the officers were permitted to open that container which was found in a car, a closed container found in a car, can be opened with probable cause. And, again, as with the abandonment exception, there are all the facts required in the record in order to prove the applicability of that exception. Also, contrary to the defendant's argument, a legitimate expectation could not be proven solely by referring back to the evidence that the defendant held the bag for however long the officer saw him hold the bag and may have been the one who placed that bag in the trunk of the car. A legitimate expectation of privacy is shown only if the defendant first exhibits a subjective expectation of privacy. That is, if he behaves as one would who intended to keep others away from that property. And here the evidence unequivocally shows that he did not take the steps necessary to guard against disclosure of the contents of the bags to the public by, again, abandoning it in the trunk of this public vehicle or higher and allowing it to be driven away from him. Further notes, even if he had taken the steps necessary to guard against disclosure, no subjective expectation of privacy would have been recognized by society as objectively reasonable because in considering that prong of the legitimate expectation of privacy test, the court considers whether there was evidence that the defendant relinquished his ability to exclude others from the property. And the answer here is that, yes, he did that. There's no legitimate expectation of privacy in property that's knowingly exposed to the public. So the defendant cannot have produced evidence to show a legitimate expectation of privacy on the facts that are in the record. The defendant in the answer brief suggests that if only the state had pointed out to the circuit court that the defendant had not met his initial primary case of burden approving in a legal search, that he then could have produced evidence sufficient to make out his primary patient case. But because on this record, there's no evidence that he could have produced to show that he took the steps necessary to guard against disclosure or that the defendant could not possibly have prevailed on that theory. And that's what separates one of the things that separates this case from the forfeiture cases cited by the defendant in his answer brief, Holloway, and the cases following Holloway. In those cases, the courts, by the way, did not consider whether the defendant established a primary patient case of illegality. And those cases were not decided based on the law that binds this court, which must determine, in the first instance, whether the defendant as the movement met his burden approving a primary patient case of an illegal search, which, again, he does by proving a legitimate expectation of privacy in the item of the search. Great. Actually, I think that concludes my presentation. Thank you, Mr. Gleason. Thank you both for your briefs and arguments while taking that on your advisement. And that concludes.